IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES REECE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-01403 |
| | ) | |
| JOHN D. WOOTTEN, JR., | ) | Judge Sharp |
| TOM E. GRAY, HENRY STEWARD, | ) | |
| MAHAILIAH HUGHES, and | ) | |
| MANUEL B. RUSS, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Plaintiff James Reece has filed a *pro se* complaint in this action asserting claims under 42 U.S.C. § 1983. Because the plaintiff proceeds *in forma pauperis*, the complaint is before this Court for an initial review pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth herein, this action must be dismissed.

I.      **Factual Allegations**

The complaint arises from the defendants' alleged "failure to provide bail hearing for one-hundred six days following reversal of plaintiff's aggravated assault conviction." (Complaint, ECF No. 1, at 2.) The plaintiff alleges that, "owing solely to a mandate for bail hearing issued by the state supreme court, plaintiff was released from prison, and subsequently found not guilty by jury at new trial." (*Id.*) He names as defendants John D. Wootten, Jr., state judge for Sumner County, Tennessee; Tom E. Gray, state judge for Sumner County, Tennessee; Henry Steward, former warden of Northwest Correctional Complex; Mahailiah Hughes, Clerk of the Criminal Court for Sumner County, Tennessee; and Manuel Russ, former appellate counsel for the plaintiff. All defendants are sued in both their individual and official capacities.

The plaintiff fails to articulate the factual basis for his claims with any degree of specificity, but the Court gleans from his allegations and from Westlaw that the plaintiff was arrested in September 2009 and then convicted of aggravated assault in December 2010. On March 14, 2013, the Tennessee Court of Criminal Appeals reversed the conviction on the basis that the defendant had been deprived at trial of his

right to counsel. *State v. Reece*, No. M2011-01556-CCA-R3-CD, 2013 WL 1089097 (Tenn. Ct. Crim. App. March 14, 2013), *perm. to appeal denied* (Tenn. June 17, 2013). After the state supreme court denied review, the mandate issued, and a bond hearing was conducted on June 28, 2013, one hundred and six days after the appellate court issued its opinion reversing the conviction. The plaintiff was apparently released on bond on that date. A subsequent trial was eventually conducted at which the plaintiff was found not guilty. The plaintiff is understandably unhappy that he spent approximately four years incarcerated for a crime for which he was ultimately acquitted, but his complaint in this case is based solely on the fact that he was denied a bond hearing and continued to be held in prison during that one hundred and six days from the date of the appellate opinion until the actual bond hearing.

After the appellate opinion was issued, the plaintiff received a letter from his appellate counsel, Manuel Russ, stating, "you will be returned to Sumner County for bail hearing, and good luck!" (Complaint at 16.) The plaintiff's suit against his attorney is based on a theory of "abandonment" by a court-appointed attorney "under contract with state government to provide legal assistance" to the plaintiff. (Complaint at 15.) He asserts that defendant Russ's actions violated his duty of care to his client and to the government and violated the plaintiff's liberty interests, his Sixth Amendment right to counsel, and his right to substantive and procedural due process under the Fourteenth Amendment, apparently because the attorney failed to assist the plaintiff in procuring his immediate release from prison.

Shortly after Reece received notice of the appellate decision, he sent a *pro se* "motion for bond" to Mahailiah Hughes in her capacity as criminal court clerk for Sumner County. The motion was stamp-filed on March 25, 2013. The plaintiff asserts that Hughes failed and refused to comply with her duty as court clerk to set this motion for a prompt hearing, thereby violating the plaintiff's constitutional rights.

Defendant Judge Gray allegedly "knowingly ignored" the plaintiff's requests for a bond hearing beginning on March 14, 2013 and continuing up until June 28, 2013, when the bond hearing was actually held (even though Judge Gray recused himself from presiding over the case on April 4, 2013). (Complaint at 7.) Defendant Judge Wootten allegedly ignored the plaintiff's requests for a bail hearing beginning around April 4, 2013, when he was apparently assigned to the case after Judge Gray's recusal, up until June 28, 2014, when the bond hearing was held. The plaintiff asserts that the judges' refusal to promptly set his case for a bond hearing amounted to the denial of bail and the violation of his rights under the

Eighth Amendment, as well as a violation of his rights to access the courts and to due process guaranteed by the First and Fourteenth Amendments. The plaintiff further insists that the actions of the judicial defendants constituted "non-judicial acts used for avoiding a judicial duty mandated by law" and therefore are not protected by principles of judicial immunity.

The plaintiff claims that on March 24, 2013, he personally notified Henry Steward, then warden of the institution at which the plaintiff was incarcerated, of the order vacating his criminal conviction. The warden replied that he would not take any action until he was ordered by the court that sentenced the plaintiff. The plaintiff further alleges that he received a document from the "Sentence Office," which was allegedly under the control of the warden, acknowledging the appellate court's reversal order but stating: "we will hold you here for another ninety days until the court of criminal appeals issues their mandate." (Complaint at 11.) The plaintiff asserts that the failure of the warden to investigate and determine the validity of the reversal order and to promptly release the plaintiff from prison violated the plaintiff's liberty interests and due process rights under the Fourteenth Amendment.

The plaintiff seeks compensatory and punitive damages from each of the defendants based on their failure to promptly release him from prison after his conviction was reversed.

## II.        Standard of Review

Because the plaintiff proceeds as a pauper, the Court must conduct an initial review of the complaint and dismiss it *sua sponte*, prior to service on the defendants, if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from defendant who are immune from such relief. 28 U.S.C. § 1915(e)(2)(B). In reviewing the complaint, the Court is mindful that *pro se* complaints are to be liberally construed and held to less stringent standards than the formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 358 (6th Cir. 2012). The Court must accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). However, the leniency afforded to *pro se* plaintiffs is not boundless, and they "are not automatically entitled to take every case to trial." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citation omitted). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).

The Sixth Circuit has confirmed that, in assessing whether a *pro se* complaint states a claim on which relief may be granted, the district courts should apply the standard established by Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). "Accepting all well pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original).

**III.    Discussion**

In this case, the plaintiff files suit under 42 U.S.C. § 1983 for vindication of his rights under the United States Constitution. Further, however, because the plaintiff appears to reside in Texas and all defendants are Tennessee residents, and the amount in controversy exceeds $75,000, the Court would have diversity jurisdiction over any adequately pleaded state-law claims under 28 U.S.C. § 1332.

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The Court finds, as an initial matter, that the plaintiff fails to state an official-capacity claim for damages under § 1983 against any defendant who is a state employee, because such claims are equivalent to suit against the state itself, which is absolutely immune under the Eleventh Amendment to suit for damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *see Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (Eleventh Amendment immunity applies to state officials sued in their official capacity).

Likewise, Judges Gray and Wooten are entitled to judicial immunity from suit for damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."). Moreover, judicial immunity is not overcome by allegations that a

judge acted in bad faith or with malice. *Id.* Rather, a judge performing judicial functions is absolutely immune from suit even if acting erroneously, corruptly or in excess of jurisdiction. *Id.* at 12–13. Absolute judicial immunity may be overcome in only with respect to actions not taken in the judge's judicial capacity and for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 11–12. , Here, the plaintiff's claims to the contrary notwithstanding, it is clear from the plaintiff's allegations that the actions (or failures to act) of these defendants—the failure or refusal to set a matter for a court hearing— were taken in a judicial capacity. Judicial immunity therefore applies.

Defendant Hughes is entitled to quasi-judicial immunity for the same reason. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ("Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune."). "As with absolute judicial immunity, whether an individual is entitled to absolute quasi-judicial immunity is determined by the function of the actor, rather than the constitutionality and reasonableness of his actions." *Smith v. Leis*, 407 F. App'x 918, 929 (6th Cir. 2011) (citing *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) ("Whether an action is judicial depends on the nature and function of the act, not the act itself.")). Accordingly, "a court 'looks to the nature of the function performed, not the identity of the actor who performed it.'" *Bush*, 38 F.3d at 847 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Here, Hughes was acting in her capacity as an arm of the court in filing the plaintiff's motion and determining whether to set or not set the matter for a hearing. She is also entitled to immunity.

Russ Manuel, the plaintiff's former defense counsel, is not subject to liability under § 1983, in his official or individual capacity, because a defense lawyer, even one appointed by the state, is not considered to be a "state actor" for purposes of a suit under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

Regardless, however, the Court also finds that the plaintiff fails to state a claim against any of the named defendants under § 1983, because the defendants' actions did not violate the plaintiff's constitutional rights. In fact, under Tennessee law, the state court did not have jurisdiction to set a bond hearing in the plaintiff's criminal case before the mandate issued, and the mandate could not issue as

long as the state's application for permission to appeal was still pending before the Tennessee Supreme Court. In that regard, Rule 43 of the Tennessee Rules of Appellate Procedure provides in pertinent part:

> (a) Filing of Mandate. The clerk of the trial court shall file the mandate promptly upon receiving it.
> . . . .
>
> (c) Remandment. When the appellate court remands the case for a new trial or hearing *and the mandate is filed in the trial court*, the case shall be reinstated therein and the subsequent proceedings conducted *after at least 10 days notice to the parties.*

Tenn. R. App. P. 43(a) & (c) (emphasis added). "The rule imposes three requirements before any subsequent proceedings may ensue. First, the mandate must issue. Second, the mandate must be filed in the records of the trial court. Third, when a case is remanded for a new trial or a hearing, notice must be given to all parties at least ten days before any proceedings occur." *Calhoun v. State*, No. 03C01-9303-CR-00100, 1994 WL 4449, at *2 (Tenn. Ct. Crim. App. Jan. 7, 1994) (citing Tenn. R. App. P. 43(a) & (c)); *see also Ali v. State*, No. 03C01-9704-CR-00163, 1998 WL 309201 (Tenn. Ct. Crim. App. June 12, 1998) (noting that the appellate court's decision on direct appeal is stayed pending final disposition by the Tennessee Supreme Court, citing Tenn. R. App. P. 42(b)); *State v. Cash*, 867 S.W.2d 741, 747 (Tenn. Ct. Crim. App. 1993) (trial court has no jurisdiction to act prior to the issuance of the mandate).[1]

The mandate, however, may not issue while an application for permission to appeal to the Tennessee Supreme Court is pending. The appellate procedural rules provide that the timely filing of an application for permission to appeal to the Tennessee Supreme Court "shall stay the issuance of the mandate of the . . . Court of Criminal Appeals, which stay is effective until final disposition by the Supreme Court." Tenn. R. App. P. 42(b). Once the Tennessee Supreme Court issues an order denying the application, "the mandate shall issue immediately." *Id.*

Thus, in this case, after the appellate court issued its opinion reversing the plaintiff's conviction, the state filed a timely appeal, which stayed issuance of the mandate and continued to deprive the trial court of jurisdiction to conduct any proceedings. The Tennessee Supreme Court issued its order denying

---

[1] The court of criminal appeals defined mandate as an
official or authoritative command, order, or injunction . . . issued pursuant to law out of a court." 55 C.J.S. Mandate 659, 660 (1948). The word is "employed to indicate the official mode of communicating the judgment of the appellate court to the lower court." *Id.* It is a "precept or order issued upon the decision of an appeal or writ of error, directing action to be taken, or disposition to be made of case, by inferior court." Black's Law Dictionary 867 (5th ed. 1979).
*Calhoun*, 1994 WL 4449, at *3.

permission to appeal on June 17, 2013. Pursuant to state rule, the mandate issued immediately. *Id.* The Court presumes that the mandate was filed in the trial court immediately as well, and that the trial court promptly entered an order setting the bond hearing eleven days later, on June 28, 2013, in accordance with Tennessee rules. The petitioner, in short, received all the process that was due. The petitioner fails to state a claim for violation of his rights under the Fourteenth Amendment, or any other constitutional provision, based on the procedure that was apparently followed in his case. The plaintiff therefore fails to state a colorable claim under § 1983 against any of the defendants.

Insofar as the plaintiff might also be attempting to state a claim against his appellate attorney for attorney negligence or malpractice, over which this Court may exercise diversity jurisdiction, such attempt fails. The plaintiff does not allege facts suggesting that his attorney acted negligently or that the plaintiff was prejudiced by any action on the part of his attorney. Rather, it appears from the complaint that the bond hearing was conducted no more than eleven days after the mandate was filed in the state trial court (in accordance with state law requiring at least ten days' notice), that the plaintiff was ordered released on bond, and that he was subsequently acquitted at a new trial. The plaintiff therefore fails to show how he was prejudiced by any action by his appellate counsel.

Finally, the Court notes that the statute of limitations for a § 1983 claim is the statute of limitations for personal-injury actions under the law of the state in which the claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F .3d 631, 634 (6th Cir. 2007). Tennessee law provides that any civil action for compensatory or punitive damages brought under the federal civil rights statutes must be commenced within one year after the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(3) (2013). Likewise, claims for attorney malpractice are subject to a one-year statute of limitations under Tennessee state law. Tenn. Code Ann. § 28-3-104(a)(2) (2013). The plaintiff's claims in this case clearly accrued no later than June 28, 2013, the date on which the bond hearing was finally conducted. The complaint, however, was received in the mail and filed in this Court more than one year later, on June 30, 2014.[2] It therefore appears from the face of the complaint that the plaintiff's claims are barred by the statute of limitations.

---

[2] Because the plaintiff is not incarcerated, he does not receive the benefit of the prison-mailbox rule, pursuant to which a prisoner's pleading is deemed to be filed, for statute-of-limitations purposes, the date it is handed to prison authorities for mailing.

For all these reasons, the Court finds that the plaintiff fails to state a claim for which relief may be granted as to any of the defendants named in the complaint. The complaint will therefore be dismissed with prejudice. An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge